# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| CAROLYN WATTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:03CV 100 LMB |
| | ) | |
| HAYTI R-III SCHOOL DISTRICT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the court upon plaintiff's Complaint alleging employment discrimination by defendant based upon race and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a). This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties under 28 U.S.C. § 636 (c).

Currently pending is defendant's Motion for Summary Judgment, along with a memorandum in support of the motion. (Documents Number 38, 39). Plaintiff has filed a Response in Opposition to Defendant's Motion for Summary Judgment, along with a memorandum in support. (Docs. No. 41, 42). Defendant has also filed a Reply to plaintiff's response. (Doc. No. 44). Also pending is defendant's Motion to Strike Plaintiff's Affidavit (Doc. No. 45), to which plaintiff has filed a Response. (Doc. 46).

<u>**Background Facts**</u>[1]

Plaintiff is a 63 year-old black female, who was formerly employed by the Hayti R-III School District ("District") as a library aide. On September 5, 2000, plaintiff was hired to work for the District on an at-will basis as a library aide at the rate of $6.30 per hour. Plaintiff was expected to work one-fourth of the school day in the high school library and three-fourths of the school day in the Mathis Elementary School library. The written job description for the library aide position, a copy of which plaintiff received when she was hired, included duties such as checking books out to students, replacing books on shelves, typing, assisting students with lesson assignments, and performing other assigned duties. The District re-employed plaintiff on an at-will basis for the 2001-2002 school year at the rate of $7.15 per hour. The District re-employed plaintiff on an at-will basis again for the 2002-2003 school year at the rate of $7.50 per hour.

At the time of plaintiff's hire in September 2000, Sarah Leonard, a black female, was the head librarian in the Mathis Elementary School library. Ms. Leonard retired from the District at the end of the 2001-2002 school year, and was replaced by Kim Johnson, a white female, effective the beginning of the 2002-2003 school year. Ms. Johnson provided plaintiff with an elementary library aide handbook and new written circulation procedures at the beginning of the 2002-2003 school year. During the 2002-2003 school year, all staff members, including plaintiff, were to be on assigned duties beginning at 7:30 a.m. through 3:15 p.m., excepting for scheduled lunch breaks.

Beginning in August 2002, Ms. Johnson began noting deficiencies in plaintiff's job

---

[1]The court's recitation of the facts is taken from defendant's Statement of Uncontroverted Facts and plaintiff's Response to defendant's Statement of Uncontroverted Facts. The court has noted any disputes as they are set forth in the briefs.

performance, which she brought to the attention of plaintiff and to Dr. Elizabeth Fish, the Mathis

Elementary School principal.[2] On September 2, 2002, Ms. Johnson submitted a written

memorandum to Dr. Fish, in which she noted several deficiencies in plaintiff's job performance,

including plaintiff's resistance to accepting changes in job assignments, plaintiff's failure to stay on

assigned tasks, plaintiff's failure to follow library procedures regarding checking out books, and

plaintiff's habit of eating breakfast in the library and accessing the internet for personal use during

work hours.[3] Dr. Fish met with plaintiff to discuss the matters raised by Ms. Johnson's

memorandum, at which time plaintiff admitted to accessing the internet for personal use and

eating breakfast in the library during work hours. Dr. Fish advised plaintiff that it was her job to

perform tasks assigned to her by Ms. Johnson and that plaintiff should not eat breakfast in the

library after her work day commenced at 7:30 a.m.[4]

On September 10, 2002, while Ms. Johnson was on vacation, the Wallace Elementary

School principal, Ms. Crowder, called Dr. Fish to complain that plaintiff had sent a third-grade

student to an unsupervised classroom and that plaintiff had refused to allow several other third-

---

[2]Plaintiff objects to this fact on the basis that "[s]uch deficiencies noted were caused as a result of Plaintiff's lack of training, the head librarian's frequent changing of assignments, the head librarian's frequent changing of the library schedule and the head librarian's constant changing of procedures." Pl's Response at 5.

[3]Plaintiff objects to this criticism on the same basis as stated above, "[s]uch deficiencies noted were caused as a result of Plaintiff's lack of training, the head librarian's frequent changing of assignments, the head librarian's frequent changing of the library schedule and the head librarian's constant changing of procedures." Pl's Response at 5.

[4]Plaintiff states that there is a genuine issue of material fact with regard to these facts in that "[p]laintiff did not make any statements regarding her allegations of discrimination because she did not believe anyone would listen." Pl's Response at 5.

grade students to check out any books.[5]  Dr. Fish instructed plaintiff not to send students back to

unsupervised classrooms and memorialized this event in a written memorandum, which she copied

to plaintiff and to Ms. Johnson on September 16, 2002.  While Ms. Johnson was on vacation in

September of 2002, plaintiff did not attempt to complete any assignment given to her by Ms.

Johnson.

On September 26, 2002, Ms. Johnson met with Dr. Fish to discuss Ms. Johnson's

concerns about plaintiff's job performance, including plaintiff's failure to perform tasks assigned

to her by Ms. Johnson.[6]  On the same day, Dr. Fish met with plaintiff to discuss Ms. Johnson's

concerns, at which time plaintiff admitted that she had not been performing a task assigned to her

by Ms. Johnson.  Dr. Fish reminded plaintiff to eat meals on assigned breaks and not during work

time.  Dr. Fish advised plaintiff that if her working relationship with Ms. Johnson did not improve,

Dr. Fish would start dismissal proceedings.  Despite Dr. Fish's discussion with plaintiff about her

job performance, the District documented numerous subsequent occasions where plaintiff made

mistakes, failed to properly complete assigned tasks, and continued to eat in the library during

work hours.[7]

On October 7, 2002, Dr. Fish met with Superintendent Dr. Wesley Townsend to discuss

her recommendation that plaintiff's employment should be terminated due to plaintiff's continued

---

[5]Plaintiff states that she has no information to deny these facts.  Pl's Response at 5.

[6]Plaintiff states that she has no information to deny this fact.  Pl's Response at 5.

[7]Plaintiff objects to these facts on the basis that, "[s]uch deficiencies noted were caused as
a result of Plaintiff's lack of training, the head librarian's frequent changing of assignments, the
head librarian's frequent changing of the library schedule and the head librarian's constant
changing of procedures."  Pl's Response at 5.

failure to complete assigned duties in a timely or satisfactory manner.[8]  After discussing the issue with Dr. Fish and reviewing the documentation, Dr. Townsend told Dr. Fish that he would recommend to the District's Board of Education ("Board") that plaintiff be terminated.[9]  On October 8, 2002, Dr. Townsend wrote plaintiff a letter informing her that Dr. Fish had recommended that plaintiff's employment be terminated based upon plaintiff's continued failure to complete duties in a timely and satisfactory manner.

Plaintiff's employment was terminated by a unanimous vote of the Board on October 10, 2002.[10]  One of the Board members who voted to terminate plaintiff's employment, James Sutton, was black.[11]  On October 11, 2002, Dr. Townsend notified plaintiff that the Board had voted to terminate her employment effective immediately and that she would be paid two weeks salary.

On December 2, 2002, plaintiff filed a Charge of Discrimination with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunity Commission ("EEOC"), alleging race and age discrimination.  On May 12, 2003, the MCHR issued a determination letter to plaintiff, in which it stated that no probable cause existed for crediting plaintiff's allegations of discrimination.  On June 17, 2003, the EEOC adopted the findings of the MCHR.  Plaintiff filed her Complaint pursuant to Title VII of the Civil Rights Act against the District for race and age discrimination on September 17, 2003.  (Doc. No. 4).

---

[8]Plaintiff states that she has no information to deny this fact.  Pl's Response at 5.

[9]Plaintiff states that she has no information to deny this fact.  Pl's Response at 5.

[10]Plaintiff states that she has no information to deny this fact.  Pl's Response at 5.

[11]Plaintiff states that she has no information to deny this fact.  Pl's Response at 5.

Plaintiff testified at her deposition that she believed she was discriminated against on the basis of her age because: (1) she did not receive any new computer training when the computer automation of the Mathis Elementary School library began in August 2002; (2) Ms. Johnson changed plaintiff's assignments too frequently; (3) Ms. Johnson changed the library schedule too frequently; (4) plaintiff believed that Ms. Johnson did not want plaintiff to be the substitute teacher when Ms. Johnson was away; (5) plaintiff believed that Ms. Johnson lacked confidence in plaintiff; and (6) Ms. Johnson made plaintiff feel like she did not know what she was doing and that she did not belong in the library. Plaintiff denied that she ever heard anyone in the District make any comments about her age in connection with any employment decision.

Plaintiff stated in her deposition that she believed she was discriminated against on the basis of her race because: (1) plaintiff did not receive any new computer training; (2) Ms. Johnson changed the library schedule too frequently; and (3) plaintiff believed that she was replaced by someone who was white. Plaintiff denied ever observing Ms. Johnson do or say anything that plaintiff thought was inappropriate with respect to any other black employee or black student. Plaintiff denied that Ms. Johnson ever made any racial joke, racial slur or posted any material which plaintiff considered to be racially offensive. Plaintiff admitted that Ms. Johnson had provided her with some computer training on the Athena program in the beginning of the 2002-2003 school year. Plaintiff received written copies of the changes to the library schedule. The changes to the library schedule affected not only plaintiff, but also affected teachers and students.

Plaintiff claims that she was paid low wages on the basis of her race and age because the District did not pay her at the rate of $10.00 per hour, and plaintiff believed that she was worth $10.00 per hour. Immediately prior to working for the District, plaintiff worked in the Green

Thumb program where she was compensated at the rate of $5.15 per hour for performing work that was similar to the work that she later performed in the library aide position for the District. Plaintiff's EEOC Charge of Discrimination did not include any reference to an allegation that the District paid plaintiff low or discriminatory wages.

**Discussion**

Defendant argues that plaintiff cannot establish a prima facie case on her race discrimination claim or her age discrimination claim because plaintiff cannot show that she was meeting the legitimate expectations of the District at the time she was discharged and because there is no evidence which would give rise to an inference of unlawful discrimination. Defendant also claims that the District has proffered a legitimate, non-discriminatory reason for terminating plaintiff's employment, and that there is no evidence to suggest that the District's reason is a pretext for unlawful discrimination. Defendant further argues that no rational fact-finder could conclude that the District intentionally discriminated against plaintiff on any unlawful basis. Finally, with regard to plaintiff's salary discrimination claim, defendant argues that this claim was not included in plaintiff's EEOC Charge of Discrimination and cannot be considered by the court. Defendant contends that, even if the court were to consider this claim, plaintiff has not adduced any specific evidence to show that she was paid less money because she was black or an older person. Defendant thus argues that it is entitled to judgment as a matter of law.

**A.      Summary Judgment Standard**

A court may grant summary judgment when no issue of material fact exists and the

moving party is entitled to judgment as a matter of law, according to Federal Rule of Civil Procedure 56 (c). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252, 106 S. Ct. at 2512. In deciding a motion for summary judgment, the court must review the facts and all reasonable inferences in a light most favorable to the nonmoving party. See Canada v. Union Elec. Co., 135 F.3d 1211, 1212 (8th Cir. 1997).

In a motion for summary judgment, the movant bears the initial burden of proving the absence of any genuine issue of material fact that would preclude judgment for the movant. See City of Mt. Pleasant, Iowa v. Associated Elec. Co-op, Inc., 838 F.2d 268, 273 (8th Cir. 1988). Once the movant has met this burden, the nonmovant may not rely on mere denials or bare allegations, but must point to specific facts that raise a triable issue. See Anderson, 477 U.S. at 249, 106 S. Ct. at 2510-2511. The nonmovant must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The Supreme Court has found that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Id. at 327 (quoting Fed. R. Civ. P. 1).


**B.**     **Plaintiff's Claims of Discrimination**

Plaintiff claims that she was terminated because of race and age discrimination in violation

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq</u>, and the ADEA, 29 U.S.C.

§ 623(a).  For the reasons herein stated, plaintiff fails to make a prima facie case on all counts,

and even if plaintiff could make a prima facie case, plaintiff's claims still fail as defendant can

show a legitimate non-discriminatory basis for plaintiff's termination, which plaintiff fails to rebut

with sufficient evidence of pretext.

To survive a motion for summary judgment in age and race discrimination cases, a plaintiff

must establish a genuine issue of material fact regarding the issue of intentional discrimination.  A

plaintiff may demonstrate discrimination by either direct or indirect evidence.  <u>See</u> <u>Nitschke v.</u>

<u>McDonnell Douglas Corp.</u>, 68 F.3d 249, 251 (8th Cir. 1995).  Cases premised on indirect

evidence are analyzed under <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817,

36 L.Ed.2d 668 (1973).  <u>See id.</u> at 251.  Plaintiff has submitted no evidence of direct

discrimination.  As such, her claims of discrimination will be analyzed under the familiar burden-

shifting framework set forth in <u>McDonnell Douglas Corp.</u>  <u>See</u> <u>Rose-Maston v. NME Hospitals,</u>

<u>Inc.</u>, 133 F.3d 1104, 1107 (8th Cir. 1998).  Under this analysis, the plaintiff has the initial burden

of proving a prima facie case of discrimination. <u>See id.</u>  If the plaintiff succeeds in establishing a

prima facie case, a rebuttable presumption of discrimination arises.  <u>See id.</u>  The burden then shifts

to the employer who is required to articulate a legitimate nondiscriminatory reason for the adverse

employment action. <u>See id.</u>  If the employer articulates such a reason, the presumption of

discrimination disappears completely and the plaintiff bears the burden of proving that the

employer's proffered reason is merely a pretext for discriminatory intention. <u>See id.</u>  However,

"[a]t all times, the plaintiff retains the ultimate burden of proving that he or she was illegally

discriminated against on the basis of his or her [race or age]."  <u>Id.</u> at 1107-1108.

1.      **Prima Facie Case**

To establish a prima facie case for race and age discrimination, plaintiff must show: (1) she was a member of a protected group, (2) she was meeting the legitimate expectations of her employer, (3) she suffered an adverse employment action, and (4) there are facts that permit an inference of discrimination.  Zhuang v. Datacard Corp., 414 F.3d 849, 854 (8th Cir. 2005); Cherry v. Ritenour Sch. Dist., 361 F.3d 474, 478 (8th Cir. 2004).  In this case, there is no dispute that plaintiff, a 63 year-old black female, is a member of a protected group.  It is also undisputed that plaintiff suffered an adverse employment action when her employment was terminated.  Defendant argues that plaintiff was not meeting the District's legitimate expectations.  Defendant also argues that there are no facts supporting an inference of discrimination.  The undersigned will discuss these arguments in turn, beginning with the fourth element of the prima facie case.

(A)      **Inference of Discrimination**

Defendant argues that plaintiff cannot establish a prima facie case of race discrimination because she cannot show that she was discharged under circumstances giving rise to an inference of race discrimination.  Defendant contends that plaintiff has offered only her own speculation in support of her claim that she was discharged under circumstances giving rise to an inference of race discrimination and that plaintiff has failed to identify similarly situated employees who were treated differently.  To raise an inference of discrimination, plaintiff argues that Ms. Johnson did not trust her because of her race and that she felt harassed by Ms. Johnson due to the frequent changes in the schedules and changes in procedures.  Plaintiff also claims that, following her termination, the District hired a young white female to fill the Assistant Librarian position.

The court finds that plaintiff's allegation that Ms. Johnson's frequent changes to the

schedule and to procedure constitute evidence of race discrimination is without merit. Plaintiff

stated during her deposition that she was provided with written copies of the changes to the

library schedule and that these changes to the schedule affected not only plaintiff, but also affected

teachers and students. See Def's Ex. A, Plaintiff's Deposition at 20-21. Plaintiff admitted that

she could not say for certain that Ms. Johnson changed the schedule with the purpose of

confusing plaintiff. See id. at 68. Further, plaintiff described Ms. Johnson as being well-

intentioned, yet disorganized and lacking focus. See id. at 69-72. Plaintiff admitted that it was

Ms. Johnson's lack of focus that caused her to frequently change her mind regarding the tasks

that plaintiff was to perform. See id. at 69. The only support plaintiff provides for her allegation

that Ms. Johnson discriminated against her because of her race is plaintiff's own affidavit, which

contains the conclusory statements "I believe I have been discriminated against because of my

race and age," and "Ms. Johnson treated me with distrust because of my age and race." Affidavit

of Carolyn Watts at 4.

An inference of discrimination can be raised, however, when a person is replaced by

someone not in the same protected class. See Whitley v. Peer Review Sys., Inc., 221 F.3d 1053,

1055 (8th Cir. 2000); Chock v. Northwest Airlines, Inc., 113 F.3d 861, 863 (8th Cir. 1997).

Plaintiff states that her replacement was a white woman. Although plaintiff has not set forth any

additional evidence of her replacement's qualifications or of the application procedure, the court

will take plaintiff's statement as true and draw all inferences in favor of plaintiff as the non-

moving party. Further, defendant has not denied that plaintiff's replacement was not in the same

protected class as plaintiff or provided other evidence to rebut the inference of discrimination.

Thus, the court finds that plaintiff has sufficiently raised an inference of discrimination to satisfy

the fourth element of her race discrimination claim.

**(B)    Legitimate Expectations of Employer**

Defendant argues that plaintiff cannot establish a prima facie case of age discrimination or race discrimination because she cannot show that she was meeting the District's reasonable job expectations at the time her employment was terminated.  Defendant contends that the record contains written documentation of specific instances in which plaintiff failed to meet the District's reasonable job expectations from the beginning of the school year in August 2002 through the date of plaintiff's termination on October 10, 2002.  Plaintiff argues that her performance evaluations from prior school years demonstrate that she was meeting the District's reasonable job expectations at the time her employment was terminated.  Plaintiff further argues that the deficiencies noted in plaintiff's work record were caused by Ms. Johnson's frequent changes in procedure and changes in the schedule.

To satisfy the second element of her prima facie case, plaintiff must demonstrate that she was actually performing her job at a level that met her employer's legitimate expectations when she was terminated.  See Whitley, 221 F.3d at 1055; Miller v. Citizens Sec. Group, 116 F.3d 343, 346 (8th Cir. 1997).  Broad, conclusory statements by plaintiff that she was doing her job and was in fact meeting defendant's expectations are insufficient.  See Whitley, 221 F.3d at 1055; Mole v. Buckhorn Rubber Prods., 165 F.3d 1212, 1218 (8th Cir. 1999).  Further, showing that she met expectations in previous positions or at some time prior to the adverse employment action is inadequate to meet plaintiff's burden.  See Miller, 116 F.3d at 346.

Plaintiff has attached performance evaluations from the 2000-2001 school year and the 2001-2002 school year as exhibits to her Response in Opposition to defendant's Motion for

Summary Judgment.  Plaintiff argues that these "very favorable" performance evaluations demonstrate that plaintiff "was capable of and was in fact performing her duties as required by the Defendant."  Pl's Response at 8.  The court finds that the performance evaluations submitted by plaintiff fail to support a finding that plaintiff was performing at a level that met her employer's expectations.

First, performance evaluations from the 2000-2001 school year and the 2001-2002 school year are too remote to show that plaintiff was meeting expectations when she was terminated during the 2002-2003 school year.  See Miller, 116 F.3d at 346.  In addition, the performance evaluations are not entirely favorable to plaintiff.  On her performance evaluation for the 2000-2001 school year, plaintiff received a score of 2.5 on a scale of 0 to 3 in all categories.  See Pl's Ex. A.  The rating scale indicates that a score of "2" denotes that the employee "meets expectations," whereas a score of "3" denotes that the employee's performance was "above expectations."  Pl's Ex. A.  On plaintiff's performance evaluation for the 2001-2002 school year, however, plaintiff received a score of 2 in all categories.  See Pl's Ex. B.  It was also noted on this evaluation that plaintiff "needs more computer skills," and "more professional development with library automation."  Pl's Ex. B.  As such, plaintiff's performance evaluations from the 2000-2001 school year and the 2001-2002 school year reveal a slight decline in plaintiff's performance.

There is ample evidence in the record of documented deficiencies in plaintiff's performance during the 2002-2003 school year.  As previously discussed, the District began to observe and note deficiencies in plaintiff's job performance in August 2002.  See Def's Ex. D, Affidavit of Dr. Elizabeth Fish, at 1; Def's Ex. E, Affidavit of Kim Johnson, at 1.  Dr. Fish stated that she assigned plaintiff a task during the week prior to the commencement of the 2002-2003

school year, which involved working along with two secretaries to collate Student Handbooks. See Def's Ex. D, Affidavit of Dr. Elizabeth Fish at 1.  Dr. Fish stated that plaintiff stopped working and then re-engaged in the assignment when she noticed Dr. Fish entering the room.  See id.  On August 19, 2002, Dr. Fish observed plaintiff eating her breakfast at 7:45 a.m. in the teacher's lounge.  See id. At 2.  Dr. Fish advised plaintiff to eat her breakfast prior to the start of her work duties at 7:30 a.m.  See id.

On August 15, 2002, Ms. Johnson began observing that plaintiff was not completing assigned tasks and was attending to personal matters during work hours.  See Def's Ex. E, Affidavit of Kim Johnson at 1.  In a written memorandum dated September 2, 2002, Ms. Johnson stated that plaintiff eats her breakfast during work hours, fails to complete assigned tasks, is resistant to accept changes in job assignments, fails to follow library circulation procedures, and uses the internet for personal matters.  See Def's Ex. 1.  On September 10, 2002, while Ms. Johnson was on vacation, Dr. Fish received a complaint from the Wallace Elementary School principal that plaintiff had sent a third-grade student to an unsupervised classroom and that plaintiff had refused to allow other third-grade students to check out any books.  See Def's Ex. F, Affidavit of Jeri Crowder at 1; Def's Ex. D, Affidavit of Dr. Elizabeth Fish at 3.  In addition, plaintiff did not even attempt to complete a lesson plan that Ms. Johnson instructed her to complete in Ms. Johnson's absence.  See Def's Ex. E, Affidavit of Kim Johnson at 2.  Although Dr. Fish discussed the District's concerns regarding plaintiff's job performance with plaintiff on September 2, 2002, September 10, 2002, and September 26, 2002, Ms. Johnson continued to report the same deficiencies in plaintiff's job performance.  Specifically, Ms. Johnson documented multiple incidents where plaintiff showed an inability or unwillingness to follow instructions for

completing various tasks, plaintiff's continued habit of eating meals during work hours, and plaintiff's failure to properly assist students in checking out books.

Further, plaintiff does not currently dispute the majority of the District's allegations regarding the deficiencies in her job performance, nor did she dispute the allegations when she was counseled regarding the deficiencies during her employment. Plaintiff only objects to the District's allegation that she failed to complete the lesson plan during Ms. Johnson's absence, claiming that she never received the lesson plan. Plaintiff does not appear to argue that she was in fact meeting the objective criteria set forth by the District, but, rather, claims that the deficiencies in her performance were caused by Ms. Johnson's frequent changes to procedure and to the schedule. Plaintiff argues that, given the new computer system and Ms. Johnson's repeated changes to procedure and scheduling, defendant "could not legitimately expect perfect performance from the Plaintiff." Pl's Response at 9. Plaintiff's argument lacks merit.

Plaintiff testified that none of the assignments given to her by Ms. Johnson required the use of a computer. See Def's Ex. A, Deposition of Carolyn Watts, at 63. Plaintiff testified that she received some computer training from Ms. Johnson and that she is not aware of any other employees that received more extensive computer training. See id. at 147, 66. Plaintiff further testified that the changes Ms. Johnson made to the schedule affected not only plaintiff, but also affected teachers and students. See id. at 20-21.

In sum, the District has documented the deficiencies in plaintiff's performance over the 2002-2003 school year. Plaintiff has failed to rebut these negative evaluations by setting forth evidence that she was, in fact, meeting the expectations of the District. For these reasons, the court concludes that plaintiff has failed to demonstrate that she was meeting the District's

legitimate expectations during the 2002-2003 school year when she was terminated. Thus, plaintiff has failed to meet her burden to establish a prima facie case of discrimination based on age or race. Accordingly, summary judgment will be entered in favor of defendant.

## 2.      Pretext

Even were the court to conclude that plaintiff met her burden of establishing a prima facie case, defendant would still be entitled to summary judgment. To rebut the presumption created when the plaintiff meets the requirements of the prima facie case, a defendant in an employment discrimination case must articulate a legitimate, nondiscriminatory reason for the plaintiff's discharge. Rose-Maston, 133 F.3d at 1108. Regarding this second step of the McDonnell Douglas burden shifting analysis, defendant has articulated a legitimate nondiscriminatory reason for its decision to terminate plaintiff's employment. The offered justification for the termination decision is that the District had documented repeated deficiencies in plaintiff's job performance and had counseled plaintiff regarding these deficiencies on multiple occasions. Accordingly, the court finds that the District has articulated a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment.

Because defendant has produced a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment, the burden shifts back to plaintiff to demonstrate pretext. On this issue, "a discrimination 'plaintiff can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that [race or age] was a determinative factor in the adverse employment decision.'" Carter v. St. Louis Univ., 167 F.3d 398, 401 (8th Cir. 1999)(quoting Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir.1996)). "The ultimate

question of law remains whether the evidence is sufficient to create a genuine issue of fact as to whether the employer intentionally discriminated against the plaintiff." Carter, 167 F.3d at 401.

In her Affidavit, plaintiff makes conclusory statements that she believes that she has been discriminated against because of her race and age. In her Response to defendant's Motion for Summary Judgment, plaintiff argues that, because her performance evaluations from previous years were very favorable to plaintiff, the only logical explanation is that she was terminated as a result of her age and race. Plaintiff, however, fails to point to any evidence to support her claims. Plaintiff testified in her own deposition that she never observed Ms. Johnson or any other District employee say anything discriminatory to plaintiff or to any other employee. See Def's Ex. A at 72-74. Plaintiff also testified that she never complained to Dr. Fish or to anyone else in the District administration that she believed she was being discriminated against on the basis of her race and age. See Def's Ex. A at 76, 142.

To survive summary judgment, a plaintiff must set forth affirmative evidence and specific facts which show that there is a genuine dispute on the issue. See City of Mt. Pleasant, Iowa, 838 F.2d at 273-274. Here, plaintiff makes no such showing on the issue of pretext. Plaintiff's conclusion that "the only logical explanation" for her termination was that she was discriminated against as a result of her race and age does not make out a genuine factual dispute regarding pretext. The court finds that the evidence is insufficient for a reasonable trier of fact to infer that race or age was a determinative factor in the District's decision to terminate plaintiff. Thus, even were plaintiff able to make a prima facie case, she has failed to rebut defendant's legitimate, nondiscriminatory reason for terminating plaintiff's employment. Accordingly, summary judgment will be entered in favor of defendant.

### 3. Salary Discrimination

In her Complaint, plaintiff appears to allege a salary discrimination claim, by stating that the District paid her "low wages." Doc. No. 4 at 4. Defendant argues in its Motion for Summary Judgment that the court lacks jurisdiction to consider plaintiff's salary discrimination claim because plaintiff failed to include this claim in her EEOC Charge of Discrimination and has thus failed to exhaust her administrative remedies. Defendant argues in the alternative that plaintiff cannot establish a prima facie case of salary discrimination because she cannot show that she was compensated less than any similarly situated employee in the District. In her Response to defendant's Motion to Summary Judgment, however, plaintiff makes no reference to her salary discrimination claim. As such, plaintiff appears to abandon this claim. Even if plaintiff had not abandoned this claim, the court would be unable to consider the claim because plaintiff has failed to exhaust her administrative remedies.

As a general rule, a plaintiff may not assert a Title VII discrimination claim in federal court unless s/he has exhausted his or her administrative remedies. See Hanenburg v. Principal Mut. Life Ins. Co., 118 F.3d 570, 573 (8th Cir. 1997); Shannon v. Ford Motor Co., 72 F.3d 678, 684 (8th Cir. 1996). The purpose of the exhaustion requirement is to accommodate the EEOC's investigatory and conciliatory role and to provide the employer with notice of the charge. See Behlar v. Smith, 719 F.2d 950, 953 (8th Cir. 1983). In this regard, the Eighth Circuit Court of Appeals has recognized that "[a]llowing a [federal court] complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." Wallin v. Minnesota Dept. of Corrections,

153 F.3d 681, 688 (8th Cir. 1998)(quoting <u>Williams v. Little Rock Mun. Water Works</u>, 21 F.3d 218, 223 (8th Cir. 1994)).

In order to initiate a claim under Title VII, a party must timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge and receive a right-to-sue letter. 42 U.S.C. § 2000e-5(b), (c), (e); <u>Stuart v. General Motors Corp.</u>, 217 F.3d 621, 630 (8th Cir. 2000). To initiate a claim under the MHRA, a party must timely file an administrative complaint with MCHR and either adjudicate the claim through the MCHR or obtain a right-to-sue letter. <u>Id.</u>

A review of plaintiff's Charge of Discrimination filed on December 2, 2002, reveals that plaintiff did not raise a salary discrimination claim. <u>See</u> Doc. No. 4. As such, she cannot bring her salary discrimination claim in district court. Because the court has found that plaintiff has failed to exhaust her administrative remedies with respect to this claim, it need not consider defendant's remaining arguments regarding plaintiff's salary discrimination claim.

**C.     Defendant's Motion to Strike**

In its Motion to Strike Plaintiff's Affidavit, defendant argues that the court should strike the Affidavit of Plaintiff Carolyn Watts, which was filed in conjunction with plaintiff's Response in Opposition to defendant's Motion for Summary Judgment, because the majority of plaintiff's Affidavit contains statements that are conclusory, lack foundation, lack a basis of personal knowledge, are self-serving or otherwise fail to comply with the requirements of Rule 56(e) of the Federal Rules of Civil Procedure. Plaintiff has filed a response to defendant's motion, in which she argues that her Affidavit was based upon her experiences while working for defendant and thus complies with Rule 56(e), which requires Affidavits to be made on personal knowledge. The

undersigned agrees that plaintiff's Affidavit complies with Rule 56(e), and will deny defendant's Motion to Strike Plaintiff's Affidavit.

## ORDER

**IT IS HEREBY ORDERED** that defendant's motion for Summary Judgment (Doc. No. 38) be and it is hereby **granted.** A separate Summary Judgment will be entered on this date.

**IT IS FURTHER ORDERED** that defendant's Motion to Strike Plaintiff's Affidavit (Doc. No. 45) be and it is **denied**.

Dated this  9th  day of March, 2006.

_Lewis M. Blanton_
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE